**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MARC DANE RADDON,

    Defendant-Appellant.

No. 15-4013
(D.C. No. 2:14-CR-00021-CW-1)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **McKAY**, and **BACHARACH**, Circuit Judges.
_____

This appeal involves the denial of a motion to suppress. The motion grew out of Mr. Marc Raddon's objection to a late-night search of his rental car. At the time, Mr. Raddon and another individual were parked in an unlit section of a gas station's parking lot. Suspicious of criminality, two police officers questioned Mr. Raddon and his companion and eventually searched the car. During the search, the police officers found guns and ammunition, which ultimately led to Mr. Raddon's conviction for possession of a firearm and ammunition after a felony conviction.

_____

[*]    This order and judgment does not constitute binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. But the order and judgment may be cited for its persuasive value under Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1(A).

Mr. Raddon appealed, arguing that the police conducted an investigative detention without reasonable suspicion of criminal activity. The district court rejected the argument on the ground that the encounter involved consent rather than an investigative detention. The government argues that this characterization was correct, adding in the alternative that the police reasonably suspected criminal activity even if the encounter involved an investigative detention. In deciding this appeal, we rely solely on the government's alternative argument, concluding that the police had reasonable grounds for suspicion. As a result, we affirm the denial of Mr. Raddon's motion to suppress.

Police encounters can take three forms:

1.    consensual encounters

2.    investigative detentions

3.    arrests

*United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996). The parties apparently agree that the police did not arrest Mr. Raddon until after they had searched his rental car. But the parties disagree on whether the initial encounter was consensual. The government argues that the encounter was consensual; Mr. Raddon characterizes the encounter as an investigative detention. We need not decide who is correct.

Even if the initial encounter constituted an investigative detention, the government defends the ruling based on reasonable grounds to suspect

2

criminality. If the government is correct, the search would have been permissible even if the encounter involved an investigative detention. *See United States v. King*, 990 F.2d 1552, 1557 (10th Cir. 1993). The suspicion would have been reasonable if the totality of circumstances created a particularized, objective basis for an investigative detention. *Poolaw v. Marcantel*, 565 F.3d 721, 736 (10th Cir. 2009).

The district court conducted an evidentiary hearing and found eight facts (among others):

1.     Mr. Raddon was parked in a high-crime area.

2.     The search took place between approximately 11:00 and 11:30 p.m.

3.     Mr. Raddon left one gas station and drove to a nearby gas station.

4.     Mr. Raddon parked in a dark area of the parking lot even though other spaces were lit.

5.     Mr. Raddon sat in his rental car for approximately ten minutes.

6.     Mr. Raddon flashed his headlights for a moment, just as an unmarked police car drove by.

7.     Mr. Raddon's headlights prevented the police officer in the unmarked car from (a) observing what was going on in Mr. Raddon's rental car and (b) getting his license tag number.

8.     The gas station (where Mr. Raddon was parked) was closed, and the only person inside was a clerk.

R. vol. 2, at 132, 134. Based on these findings, the police officers' suspicion was reasonable. *Id.* at 131.

3

Mr. Raddon does not challenge any of the district court's factual findings. Instead, he argues that the suspicion was unreasonable. In reviewing that conclusion, we consider not only the court's findings but also the government's evidence on matters going beyond the factual findings. *See United States v. Conner*, 699 F.3d 1225, 1231 (10th Cir. 2012) (relying in part on evidence, for reasonable suspicion, even though the district court had not relied on that evidence). This evidence included testimony that

- Mr. Raddon had backed into a parking spot, permitting him to leave by driving forward rather than backing out and

- only one other car was in the parking lot.

R. vol. 2, at 22, 43.

Together, the findings and evidence create reasonable suspicion of criminality:

- Why else would Mr. Raddon go from one gas station to another gas station's parking lot, shortly before midnight,[1] and sit in his car for ten minutes?

- Why else would he choose to park in a dark section of a parking lot in a high-crime area?[2]

---

[1]     *See United States v. McHugh*, 639 F.3d 1250, 1257 (10th Cir. 2011) ("We have . . . held that the fact that an incident occurred late at night or early in the morning is relevant to the . . . analysis [of reasonable suspicion].").

[2]     The Court can consider the fact that the investigative detention occurred in a high-crime area. *McHugh*, 639 F.3d at 1257.

- Why else would he back into the parking spot, allowing a quick departure, when only one other car was in the lot?

In determining whether the findings and evidence created reasonable suspicion, we "accord deference to [the police officers'] ability to distinguish between innocent and suspicious actions." *United States v. Simpson*, 609 F.3d 1140, 1146-47 (10th Cir. 2010). Both police officers testified that they had regarded the circumstances as suspicious.

For example, one of the officers explained that it was suspicious for someone to flash his headlights, turn them off immediately, and remain parked in a dark section of a parking light in a high-crime area:

> The most peculiar circumstance I noticed was the headlight issue where knowing that the vehicle, based on Officer Stone's observation, had been to one convenience store, left and driven to another one, and when I initially turned onto the 8590 West that the headlights came on on the vehicle, I initially assumed the vehicle was going to pull out of the parking stall. But after I passed the vehicle, for the headlights to turn back off and the vehicle to stay parked there and with still nobody exiting the vehicle, yes, I believe that to be suspicious, especially in that area parked in that parking lot.

R. vol. 2, at 102.

The other police officer added that he had found it suspicious for the driver to park behind the building, out of view, in a manner in which he could exit quickly even though it was late at night:

> So they pulled into this gas station known as the Fastrac, and they pulled behind and parked in a – basically there's a few stalls that are behind the building. They're pretty much out of view, it's darker back there. They parked and they parked where they could exit onto the roadway with ease. There was

5

no obstruction, so it was a straight shot out. And that didn't seem like normal business, especially at that time of night. There was nobody else there except one car which belongs to the clerk that was running the place.

*Id.* at 22.

The officer added that the travel from one gas station to another suggested that the occupants could be under-age youngsters trying to buy beer or individuals preparing to rob the clerk:

And so, you know, that kind of, you know, just added to my, okay, what are these guys doing now? You know, I'm not sure whether they were, you know, younger guys and they were trying to buy some alcohol at Chevron and they got denied, so now they went down to the other place and they were going to try and buy or, you know, were they going to try and do a beer run on the place or were they going to try to rob the place? I just wasn't sure.

*Id.*

Mr. Raddon questions the officers' concerns, arguing that the findings and evidence could just as easily suggest innocent behavior. For example, Mr. Raddon says he might have been reading a map or taking a rest. Even if these possibilities were plausible, they would not preclude reasonable suspicion. *See United States v. Pettit*, 785 F.3d 1374, 1381 (10th Cir. 2015) ("[T]he existence of a plausible innocent explanation does not preclude a finding of reasonable suspicion.").

But the police could reasonably consider these possibilities as implausible. For example, the police officers might have wondered how Mr. Raddon could read a map, while parked in a dark section of the

6

parking lot, without using his interior lights. Or the police might have wondered why Mr. Raddon would have left the first gas station if he just wanted to rest. Even defense counsel acknowledged the peculiarity of Mr. Raddon's driving from one gas station to another. *See* R. vol. 2, at 120 (statement by defense counsel that Mr. Raddon's "driving pattern" was "a little weird"); Appellant's Opening Br. at 19 (statement by defense counsel that Mr. Raddon engaged in an "unusual" driving pattern, "going from one gas station to another very close by"). And why would Mr. Raddon flash his headlights if he was simply resting? The police might consider the flashing headlights as a signal for another individual to engage in a drug deal or to assemble for a robbery. But it is difficult to see how the flashing of headlights in a deserted parking lot would be consistent with Mr. Raddon's desire to rest.

Mr. Raddon argues that the police must not have thought that their suspicions were reasonably grounded, for (1) they intended to arrange a consensual encounter rather than an investigative detention and (2) one officer allegedly lied to the other about Mr. Raddon's conduct. But Mr. Raddon acknowledges that the police officers' "subjective thoughts and intent" do not bear on the issue of reasonable suspicion. Appellant's Opening Br. at 23 (quoting *United States v. Whitley*, 680 F.3d 1227, 1234 (10th Cir. 2012)).

In our view, the police could reasonably suspect criminality from Mr. Raddon's peculiar actions. As a result, we uphold the denial of the motion to suppress based on the government's alternative argument for affirmance.

Entered for the Court


Robert E. Bacharach
Circuit Judge